UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDY OTHOMAN JOSEPH,<br><br>                    Petitioner,<br><br>v.<br><br>JEREMY CASEY; DANIEL J. BRIGHTMAN; TODD LYONS; and KRISTI NOEM,<br><br>                    Respondents. | Case No.: 3:25-cv-3560-JES-KSC<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Eddy Othoman Joseph's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Pursuant to the Court's order to show cause (ECF No. 2), Respondents filed a return to the petition and Petitioner filed a traverse. ECF Nos. 4, 5. For the reasons set forth below, the Court **GRANTS** the petition.

## I.    BACKGROUND

Petitioner, a native of Angola, alleges that he came to the United States in 1996 in order to seek asylum. ECF No. 1 ¶ 12. Per Respondents' records, it appears that Petitioner was apprehended by Border Patrol as a juvenile near Otay Mesa, California, on October 5, 1996, and issued an Order to Show Cause and Notice of Hearing. ECF No. 4-1 at 10-11, 27-33. An Immigration Judge ("IJ") found him deportable to Angola on April 7, 1997. ECF

No. 4-1 at 25-26. Petitioner appealed the IJ's decision, and after a series of immigration court and appellate proceedings, Petitioner's order of removal became final after a Ninth Circuit denial and mandate that issued on May 12, 2008. ECF No. 4-2 ¶¶ 7-11; ECF No. 1 ¶¶ 14-15.

Respondents state that Immigration and Customs Enforcement ("ICE") arrested Petitioner on January 25, 2011. ECF No. 4-2 ¶ 13; ECF No. 4-1 at 12-15. Two days later, on January 27, 2011, ICE issued Petitioner an Order of Supervision ("OSUP") that released him from custody with regular ICE check-ins. ECF No. 1 ¶ 20; ECF No. 1-2 at 2-7.

Since, Petitioner alleges that he has lived in the United States for 17 years and established significant ties to the community. ECF No. 1 ¶ 21. He is married to a United States citizen and has a minor son, who lives in New Jersey with them. *Id.* ¶ 22. Petitioner alleges that because he was a minor when he fled from Angola, his attempts over the years to get the Angolan consulate to recognize his citizenship and issue a passport or travel document have been denied. *Id.* ¶¶ 13, 24.

On May 29, 2025, Petitioner reported to ICE for a scheduled check-in pursuant to his OSUP. *Id.* ¶ 27. Petitioner alleges that he was detained after that appointment, without any warning or notice. *Id.* Petitioner was originally detained in New Jersey, and held at the Delaney Hall detention facility for about a month. *Id.* ¶ 28. He was then transferred to another facility in Montgomery, Texas, where he remained for several months. *Id.* ¶ 29. In that facility, Petitioner alleges that he had various conversations with detention officers regarding potential deportation to Mexico or South Africa, and that they were looking into his criminal history. *Id.* ¶¶ 30-33. Petitioner alleges that the only criminal record he has is a misdemeanor conviction in California from 2017 for driving under the influence, for which he completed a probationary sentence. *Id.* ¶ 23. On November 19, 2025, almost 6 months after his initial re-detention, Petitioner was transferred to a facility in Imperial, California, where he is currently held. *Id.* ¶ 34.

In his Petition, Petitioner asserts two claims: (1) that Respondents violated due process by not following its own regulations in his re-detention (*id.* ¶¶ 49-57); and (2) that

his detention has been so prolonged to date that it violates the due process standard set in *Zadvydas v. Davis*, 533 U.S. 678 (2001) (*id.* ¶¶ 58-65).

## II.  LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.  DISCUSSION

As stated above, Petitioner brings two claims, (1) first, to challenge the procedure under which he was re-detained on May 29, 2025; and (2) second, to challenge the prolonged length of his detention to date. The Court will address each in turn.

### A.  Due Process Regarding Revocation of Petitioner's OSUP

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of a suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner

and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The detention and release of noncitizens that are subject to a final order of removal is governed by 8 U.S.C. § 1231. This statute provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id*. § 1231(a)(3).

Supervised release and any revocation of such release thereafter is governed by either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025). Here, Petitioner did receive a letter, dated May 29, 2025, titled "Notice of Revocation of Release." ECF No. 4-1 at 35-36. In this notice, ICE states that his re-detention was pursuant to both provisions. *Id.* (citing 8 C.F.R. § 241.4(l)(2)(iii) and 8 C.F.R. § 241.13(i)(2)).

The Court previously addressed what both these provisions required in *Van Nguyen v. Noem*, No. 3:25-CV-3062-JES-VET, 2025 WL 3251374, at *1 (S.D. Cal. Nov. 21, 2025). *See also Bui v. Warden of the Otay Mesa Det. Facility*, No. 25-CV-2111-JES-DEB, 2025 WL 2988356 (S.D. Cal. Oct. 23, 2025). First, with regards to § 241.4(l), the Court found that revocation under any part of this provision—either § 241.4(l)(1) or § 241.4(l)(2)—requires an adequate notice of the reasons for the revocation of release and a prompt initial informal interview to afford the alien an opportunity to respond to the reasons given in the notice. *Id.* at *2. Second, with regards to 8 C.F.R. § 241.13(i), the Court similarly found that revocation under this provision requires the following: (1) ICE to determine that the detainee is likely to be removed in the reasonably foreseeable future "on account of changed circumstances;" (2) that the alien "will be notified of the reasons for revocation of his or her release;" and (3) after the alien's detention for revocation of release, a prompt initial informal interview at which the alien could respond to the reasons for revocation. *Id.* Violation of any these procedures may form the basis of a Due Process

violation. *Id.* Thus, these provisions together, at a minimum, require Petitioner to have received adequate notice of the reasons for his revocation of release and an opportunity to be heard on those issues. *Id.* at 3. The Court adopts the full reasoning of *Van Nguyen* here.

Petitioner was provided a Notice of Revocation at the same time as his re-detention. ECF No. 4-1 at 35-36. Thus, timing of the notice is not at issue. The Notice provided the following reasons:

> This letter is to inform you that your case has been reviewed and U.S. Immigration and Customs Enforcement (ICE) has determined that you will be returned to ICE's custody and detained at this time pursuant to 8 C.F.R. § 241.4(l)(2)(iii) and/or 8 C.F.R. § 241.13(i)(2). This decision was made based upon a review of your file and/or your personal interview, and in light of the fact that circumstances have changed.
>
> On January 27, 2011, you were released from ICE custody and issued an Order of Supervision. At this time, ICE intends to enforce your removal order because there is now a significant likelihood of your removal in the reasonably foreseeable future.

*Id.* This language is substantially similar, if not identical, to language from other notices that courts within this Circuit have held to be not sufficient. *See, e.g.*, *Van Nguyen*, 2025 WL 3251374, at *3 (finding conclusory language in notice that said revocation was based on a "review of your official alien file and a determination that there are changed circumstances in your case" and that "[y]our case is under current review for removal to an alternate country"); *Saengphat v. Noem et al.*, No. 3:25-CV-2909-JES-BLM, 2025 WL 3240808, at *7 (S.D. Cal. Nov. 20, 2025) (finding same language in notice to be too "conclusory" to provide adequate notice); *McSweeney v. Warden of Otay Mesa Det. Facility*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376, at *5 (S.D. Cal. Oct. 24, 2025) (holding that language in notice stating that "ICE has determined that you can be expeditiously removed from the United States pursuant to an outstanding order of removal" was "conclusory and unclear" and failed to provide adequate notice of the basis of the revocation decision); *J.L.R.P., v. Wofford et al.*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *7 (E.D. Cal. Nov. 14, 2025) (holding that same language in the

1  notice of revocation of release "did not provide any specific changed circumstance
2  applicable to petitioner").

3  As to the informal interview, even though the Notice mentions that Petitioner is
4  entitled to one, nothing in Respondents' return to the petition nor the Petitioner's traverse
5  states that he ever received it. *See generally* ECF Nos. 4. It has now been many months
6  since Petitioner's re-detention on May 29, 2025. Courts have routinely found a due process
7  violation where no informal interview took place after the revocation of release. *M.S.L. v.*
8  *Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025)
9  (collecting cases); *Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL
10 2898985, at *6 (S.D. Cal. Oct. 10, 2025) (due process violation where "[n]othing in the
11 record indicates that Petitioner was provided with an interview in connection with the
12 revocation of his release or otherwise afforded an opportunity to respond to the reasons for
13 his re-detention"); *Delkash v. Noem*, No. 5:25-CV-01675-HDV-AGR, 2025 WL 2683988,
14 at *5 (C.D. Cal. Aug. 28, 2025) (same where there was "no evidence that [petitioner] has
15 been afforded an informal or formal interview"); *Phan v. Noem*, No. 3:25-CV-02422-
16 RBM-MSB, 2025 WL 2898977, at *4 (S.D. Cal. Oct. 10, 2025) (finding same where no
17 interview was conducted).

18 In summary, the Court concludes that Respondents failed to follow their own
19 regulations in re-detaining Petitioner by failing to: (1) provide him notice that states an
20 adequate basis to revoke his release; and (2) provide him with a "prompt" informal
21 interview so that he could contest the reasons for his revocation. Like many other district
22 courts within this circuit, the Court finds that these failures constitute a violation of
23 Petitioner's due process rights and justify his release. *M.S.L.*, 2025 WL 2430267, at *12;
24 *Constantinovici*, 2025 WL 2898985, at *7; *Phan*, 2025 WL 2898977, at *5; *Delkash*, 2025
25 WL 2683988, at *6; *Diaz*, 2025 WL 2581575, at *9.

26 Accordingly, Petitioner's habeas petition is **GRANTED** on this ground.
27 //
28 //

### B.     Due Process Regarding Length of Detention

Petitioner additionally argues that his detention has become too prolonged and now stands in violation of due process. In *Zadvydas v. Davis*, the Supreme Court held that indefinite immigration detention raises due process concerns under the Fifth Amendment. 533 U.S. at 690.

After an immigration court enters a final order of removal, the case is no longer pending and the government "shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A)-(a)(2)(A). The government may hold the alien in custody during the initial 90-day removal period by statute. *Id.* In *Zadvydas*, the Supreme Court held that when the government is unable to remove an alien within 90 days, the alien may seek review of the reasonableness of their continued detention under the due process clause through petition for writ of habeas corpus. 533 U.S. at 687. The Court instructed courts to analyze whether continued detention beyond the 90-day period "exceeds a period reasonably necessary to secure removal," based on "the [removal detention] statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699. The Court has held that it is presumptively reasonable for the government to detain an alien for a period of 6 months while it works to effectuate his removal after issuing a final order of removal against him. *Id.* at 701. Beyond that period, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute" and grant the petition for writ of habeas corpus. *Id.* at 699-700.

First, the six-month presumptively reasonable period has passed for Petitioner. Courts in the Ninth Circuit, and most courts across the country, calculate detention "cumulatively based on all post-removal order detentions to determine whether *Zadvydas*'s presumption of reasonableness is exceeded." *Phan v. Warden of Otay Mesa Det. Facility*, Case No.: 25-cv-02369-AJB-BLM, 2025 WL 3141205, at *3 (S.D. Cal. Nov. 10, 2025) (collecting cases). Petitioner's detention on January 27, 2011 and his current re-detention since May 29, 2025, total approximately seven months. Thus, the Court must consider

whether Respondents have shown that Petitioner's removal is reasonably foreseeable. See *Zadvydas*, 533 U.S. at 699-700.

Under *Zadvydas*, the burden is on the petitioner to first provide a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. If the petitioner makes this showing, then the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Id.*

Here, the Court finds that Petitioner has met his initial burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Petitioner argues that 17 years have lapsed since his initial removal order became final, during which the government has been unable to successfully remove him, and that the government has not been able to secure a valid travel document for him to Angola. ECF No. 1 at ¶¶ 61-62; *see Azzo v. Noem et al.*, No. 3:25-CV-03122-RBM-BJW, 2025 WL 3535208, at *3 (S.D. Cal. Dec. 10, 2025) (finding initial burden met under similar situation).

Thus, the Court must evaluate Respondents' evidence regarding why removal of Petitioner is reasonable in the foreseeable future. Respondents submit a declaration from an ICE Supervisory Detention and Deportation Officer that states the following:

> 16. Angola will issue travel documents for the removal of its citizens, and on July 3, 2025, a travel document request (TDR) was emailed to the Consulate General of Angola, Houston, Texas.
>
> 17. On July 7, 2025, Petitioner was interviewed by the Consulate General of Angola, Houston, Texas.
>
> 18. On July 14, 2025, ERO was informed by the Angolan Consulate that the TD request was denied due to no evidence of Angolan citizenship.
>
> 19. On July 30, 2025, a TDR was submitted to the Embassy of the Republic of South Africa as a third country removal option.
>
> 20. On August 18, 2025, ERO was informed that the request for a travel document for removal from the South African Embassy was denied.

>21. ERO is working with ERO Headquarters Removal and International Operations (HQ-RIO) to seek a third country for removal.
>
>22. On December 5, 2025, ERO received an email from HQ-RIO stating that HQ-RIO is actively working with the Department of State and DHS on avenues to remove Petitioner to a third country.
>
>23. Should ERO identify a third country for removal, Petitioner will be notified in writing of the third country at least twenty-four (24) hours prior to removal.
>
>24. ERO is also seeking additional evidence of Petitioner's Angolan citizenship in order to re-submit a TDR to the Consulate General of Angola.

ECF No. 4-2 ¶¶ 16-24.

While the Court does not doubt that Respondents are working to secure Petitioner's removal, the evidence does not support that it is reasonably likely in the foreseeable future. If anything, the evidence indicates that all attempts have failed so far. A TDR for Angola has been denied. *See also* ECF No. 4-1 at 2-3. This is consistent with Petitioner's own allegations that he has not been successful over the years to obtain a passport or travel document to Angola, given the difficulties in proving his citizenship given his minor status when he left the country. *See* ECF No. 1 ¶¶ 13, 24. As to third country removal, a TDR to South Africa has been denied as well. *See also* ECF No. 4-1 at 18-19. Indeed, courts have found that diligence and good faith efforts alone is not sufficient to make such a showing. *See Grishchenko v. Noem*, No. 25-CV-3514-JES-JLB, 2025 WL 3675070, at *2 (S.D. Cal. Dec. 17, 2025) (rejecting argument that the government's good faith and/or diligent effort is sufficient); *Conchas-Valdez v. Casey*, No. 25-cv-02469-DMS-JLB, 2025 WL 2884822 at * 3 (S.D. Cal. Oct. 6, 2025) (same).

Respondents' remaining arguments mirror the speculative, non-individualized arguments they have made in other cases that courts have rejected. *Azzo*, 2025 WL 3535208, at *3 (rejecting argument regarding "recent developments in international relations between the United States and several other countries have made probable ICE's removal of immigrants"); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025)

("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur.").

Respondents identify no further third countries that they are pursuing removal to, nor do they identify what other evidence they seek that might make another attempt to prove Petitioner's Angolan citizenship more likely. The Court concludes that Respondents have not their burden. *See, e.g.*, *Grishchenko*, 2025 WL 3675070, at *2 (finding burden not met when ICE failed to removal the petitioner on several occasions and fail to identify any potential third party countries which might accept the petitioner); *Azzo*, 2025 WL 3535208, at *4 (finding burden not met with general allegations that ICE and ERO was "in process of identifying third countries" that may accept the petitioner).

Accordingly, Petitioner's habeas petition is also **GRANTED** on this ground.

### IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting Order of Supervision. The Parties are **ORDERED** to file a Joint Status Report no later than **5:00 p.m.** on **January 2, 2026**, confirming that the Petitioner has been released. The Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: December 29, 2025

Honorable James E. Simmons Jr.
United States District Judge